UNITED STATES NAT. BANK OF NEW YORK v. FIRST NAT. BANK
OF LITTLE ROCK et al.

(Circuit Court of Appeals, Eighth Circuit. December 10, 1894.)

No. 507.

1. BILLS AND NOTES—ACCOMMODATION INDORSEMENT—NOTICE.

The fact that notes, offered for discount to a bank by another bank, its correspondent, are payable to the president of the offering bank individually, and bear his own indorsement, followed by that of the bank, affixed by him as president, is not sufficient to give notice to the discounting bank that such notes are the individual property of such president, and not of the bank, and that the bank's indorsement is for accommodation only, or to put the discounting bank on inquiry, especially when the negotiations for the discount have been carried on by letters written, in their official capacity, by the president and cashier of the offering bank.

2. PRACTICE ON APPEAL—POINT NOT RAISED BELOW.

A defense abandoned at the trial, and upon which no val   exception to a judgment against the defendant could have been based, cannot be invoked to support a judgment in his favor, rendered upon another ground, which was clearly erroneous.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This was an action by the United States National Bank of New York against the First National Bank of Little Rock, Ark., and S. R.

Cockrill, its receiver, upon five notes indorsed by the Little Rock Bank. On the trial in the circuit court a verdict was directed for the defendants. Plaintiff brings error.

This was an action which was brought by the plaintiff in error, the United States National Bank of New York, against the First National Bank of Little Rock and Sterling R. Cockrill, its receiver, to enforce the liability of said First National Bank of Little Rock as an indorser of five promissory notes. For convenience the two banks above mentioned will be referred to hereafter as the "New York Bank" and the "Little Rock Bank." Three of said notes were in the following form:

"$5,000.                                    Little Rock, Ark., Dec. 7th, 1892.

"Four months after date we or either of us promise to pay to the order of G. R. Brown and H. G. Allis five thousand dollars, for value received, negotiable and payable, without defalcation or discount, at the First National Bank of Little Rock, Arkansas, with interest from maturity at the rate of ten per cent. per annum until paid.                    City Electric St. Ry. Co.
                                           "H. G. Bradford, Pt."

The three notes aforesaid, when received for discount by the New York Bank, bore the following indorsements:

"George R. Brown.
"H. G. Allis.
"First National Bank, Little Rock, Ark.
"H. G. Allis, Pt."

Two of said five notes were in the following form, except that one was made payable five months after date instead of four months after date:

"$5,000.                                     Little Rock, Ark., Dec. 7, 1892.

"Four months after date we or either of us promise to pay to the order of James Joyce five thousand dollars, for value received, negotiable and payable, without defalcation or discount, at the First National Bank of Little Rock, Arkansas, with interest from maturity at the rate of ten per cent. per annum until paid.                    McCarthy & Joyce Co.
                                      "Geo. Mandlebaum, Secty. & Treas."

The notes last aforesaid, when received for discount by the New York Bank, were indorsed as follows:

"James Joyce.
"H. G. Allis.
"First National Bank, Little Rock, Ark.
"H. G. Allis, Pt."

Business relations between the New York Bank and the Little Rock Bank were inaugurated in pursuance of the proposition contained in the following letter written by the second assistant cashier of the New York Bank to the cashier of the Little Rock Bank, to wit:

                                              "New York, June 21, 1892.

"W. C. Denny, Esq., Cashier, Little Rock, Ark.—Dear Sir: Can we not do business with your good bank? We should like to enroll your name upon our books, and we think the relation, if once established, could be made satisfactory to you in every particular,—at any rate, it would be our earnest endeavor to make it so. We will give you two per cent. on your daily balances, granting you our best collection facilities, taking all your foreign items east of the Mississippi river, and crediting them to your account immediately without charge. If you will send on $50,000 of your good, short-time, well-rated bills receivable, we will be pleased to place them to your credit at four per cent. We are anxious to do business with your bank, having warmly and favorably known of it, and should be pleased to hear from you in reference to the above proposition.
       "Yours, very truly,              J. W. Harriman, 2nd Asst. Cashier."

In response to said letter, negotiable paper to the amount of $50,728 was forwarded to the New York Bank to be discounted for and on account of the

Little Rock Bank. The letter transmitting such paper was dated June 24, 1892, and was signed by H. G. Allis, as president of the Little Rock Bank. This paper was all indorsed by the Little Rock Bank, and the proceeds of the discount were placed to the credit of that bank. On July 9, 1892, negotiable paper to the amount of $50,301.88, duly indorsed by the Little Rock Bank, was forwarded to the New York Bank for discount, and the same was discounted, and the proceeds were placed to the credit of the Little Rock Bank, at its request. Further transactions of the same kind took place between the two banks on July 26, 1892, and on October 31, 1892. Between June 24 and November 25, 1892, paper to the amount of $175,476 appears to have been thus discounted by the New York Bank for and in behalf of the Little Rock Bank, all of which paper bore the indorsement of the latter bank. On November 25, 1892, the following letter was written by the Little Rock Bank:

"The First National Bank of Little Rock, Ark., Nov. 25, 1892.

"United States National Bank, New York City—Gentlemen: Kindly advise us if you can give us $25,000 more in discounts. We have not decided whether we will make further discounts this year, although it is more than probable that we will have to, as our cotton men do not want to sell at present. We believe the advance in price will cover shortage of crop, and that our collections will be equal to those of last year. If our cotton men continue to hold their cotton, it will be necessary for us to make further rediscounts, and we want to know what we can do in case they refuse to sell. If you can grant us this favor, kindly let us know what rate of interest you will want. Your immediate reply is requested.

"Yours, very truly,                    W. C. Denny, Cashier."

The proposition contained in this letter was accepted by the New York Bank on November 28, 1892, and on the 13th day of December the following letter was written:

"Little Rock, Ark., Dec. 13, 1892.

"United States Nat. Bank, New York City—Gentlemen: In accordance with our letter of the 25th ult., and your reply of the 28th ult., we find that we shall need some more money, as our cotton men are not shipping out any cotton. It seems to be the inclination of all of them to hold for a better price, and we are now carrying $175,000 in demand loans on cotton, which we may have to carry two or three months longer. We inclose herein paper as scheduled below. Kindly wire us proceeds to our credit, and oblige,

"Yours, very truly,                    H. G. Allis, President."

Among the notes inclosed and scheduled in the foregoing letter of December 13, 1892, were the five notes now in suit and two other notes made by the Dickenson Hardware Company, the whole remittance amounting to $32,500. On the 16th day of December, 1892, the Little Rock Bank was duly notified by the New York Bank that the paper sent to it on December 13, 1892, had been received and discounted, and that the net proceeds thereof, amounting to $31,871.27, had been placed to its credit. The receipt of this notice was duly acknowledged by the Little Rock Bank by the following letter written by its cashier, to wit:

"The First National Bank of Little Rock, Ark., December 20, 1892.

"United States National Bank, New York City—Gentlemen: We have your favor of the 16th inst., inclosing the Dickenson Hardware Company note for completion, which we herewith return. We charge your account with $31,871.27, proceeds of $32,500.00 of discounts.

"Yours, very truly,                    W. C. Denny, Cashier."

During the trial of the case it was shown that the five notes in suit, aggregating $25,000, had never passed the scrutiny of the discount board of the Little Rock Bank, and that they had never been entered upon the books of that bank as forming part of its bills receivable. It was further shown that as soon as the New York Bank had discounted the paper, and had given notice of that fact, the amount realized from the discount was placed to the credit of the individual account of H. G. Allis on the books of the Little Rock

Bank, pursuant to the order of said Allis, given to the bank's bookkeeper. Allis' individual account was at the time overdrawn to the amount of some $10,000 or $11,000. The credit thus given canceled the overdraft. There was no evidence that the New York Bank had any knowledge of the facts last aforesaid. It was shown, however, and the fact is undisputed, that the proceeds of the discount of the five notes in question were placed to the credit of the Little Rock Bank on the books of the New York Bank, and that they were subsequently drawn out on checks issued by the former bank.

On the foregoing state of facts the jury was directed to return a verdict in favor of the defendants, which was accordingly done, and the plaintiff has sued out a writ of error.

W. C. Ratcliffe and John Fletcher, for plaintiff in error.

Sterling R. Cockrill and Ashley Cockrill, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The action of the circuit court in directing a verdict for the defendant seems to have been predicated upon the ground that the form of the notes in suit was such as to give notice to the plaintiff, when it received the same for discount, that they belonged to Allis; that they were not the property of the Little Rock Bank; and that said bank was merely an accommodation indorser for Allis. This view was clearly stated in the following instruction, which was given to the jury:

"The court tells you upon this branch of the case that it conceives it to be its duty to tell you that the paper sued upon is of such a character, from its inception to its final delivery, or final indorsement by Allis and delivery to the United States National Bank of New York, as should have put that bank upon notice of Allis' want of authority. These notes, it appears clearly in evidence, were accommodation notes, every one of them. They were made payable, three of them to George R. Brown and H. G. Allis, payable at the bank. There is nothing upon the face of this paper to show that the bank ever had anything to do with them, or that they were ever in the bank, except the indorsement of Allis, president, upon the back of them. They are made payable to the order of Brown and Allis,—three of them, and they are indorsed upon the back, 'George R. Brown and H. G. Allis.' So if it appears from the testimony, as it does, that they were accommodation paper given to Brown and Allis, and indorsed by Brown and then by Allis, and then indorsed by Allis as president of the bank, the court tells you that that was sufficient to put any bank upon notice that he was certifying, or indorsing rather, the paper as president of the First National Bank, without authority to do so; he was indorsing his own paper, and that was enough to put any bank upon notice. That being the case, the court instructs you to find a verdict for the defendant."

As the trial court, in giving the foregoing instruction, did not lay stress on any fact other than the mere form of the notes, and as it is not pretended that the plaintiff had any information that they were accommodation notes, or any knowledge with reference to Allis' relation to the paper, except such as was conveyed by the notes themselves, the substantial question presented by the record is whether the notes were, in fact, in such form that the plaintiff ought to have known that they were the property of Allis, and that the defendant bank was merely an accommodation indorser. It will be observed that the paper showed that Allis was one of the payees in three of the notes, and that his name appeared as indorser on all

**of** the notes immediately preceding the indorsement of the Little Rock Bank. No other fact is disclosed by the notes themselves that can be regarded as having any special significance. On the other hand, it appears from the correspondence, heretofore quoted, that the request to discount the paper in controversy was contained in two letters written in behalf of the defendant bank by its cashier and president respectively. These letters were clearly official letters, such as had previously been written by the bank when other paper to a large amount had been offered by it for discount to its eastern correspondent; and we are unable to discover any statement in either of the letters, or any circumstance connected with the writing of the same, which was known to the plaintiff, that would lead any one to suspect that the paper tendered for discount was not held and owned by the Little Rock Bank, or that the discount was not sought for its benefit.

Such being the undisputed facts of the case, in deciding as to what information was given to the plaintiff by the form of the notes we must apply the well-known rule that a person purchasing negotiable paper is entitled to assume, in the absence of knowledge to the contrary, that the actual relation of every party thereto, and his interest therein is what it seems to be from the face of the paper. In the present case, the notes, when presented to the plain-tiff for discount, were so drawn and indorsed as to create a presumption, on which the plaintiff was entitled to act, that they had been indorsed by Allis to the Little Rock Bank, and that the bank was the holder of the same for value. And this presumption, created by the notes themselves, was confirmed by the correspondence between the two banks in relation to the proposed discount to which we have heretofore adverted. It is suggested in argument, however, that even if the notes did create the presumption that Allis had sold and indorsed them to the bank of which he was president, yet that this transaction was in itself suspicious, and should have put the purchaser of the paper upon inquiry. With reference to this suggestion, it is sufficient to say that it is not unlawful for a bank to purchase commercial paper from a person who happens to be connected with it as an officer or a director. We are not aware of any authority which maintains that a bank cannot discount paper for its officers or directors, especially if it is paper executed by a third party, and, as a matter of practice, we believe that it frequently happens that such discounts are sought and obtained. Because a man is a member of the board of directors or an officer of a given bank, it does not follow, we think, that he must carry his custom elsewhere, and that he must transact his banking business with some other bank. That, in our judgment, would be an unreasonable rule, which no court ought to prescribe. It is doubtless true that a bank officer, who offers paper for discount to the bank with which he is connected, cannot himself represent the bank in such negotiation nor in any other transaction with the bank in which he has a personal adverse interest. He ought not to assume, and he cannot lawfully assume, the dual role of seller and purchaser; in the nature of things, there must be some disinterested person to repre-

sent the bank in such a transaction, as, under the law of agency, a person while acting as agent for another cannot enter into a contract with himself. Claflin v. Bank, 25 N. Y. 293; Mercantile Mut. Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408. But, conceding the foregoing doctrine to be sound, it does not follow that the plaintiff was bound to assume, when it purchased the notes in controversy, that they had been unlawfully sold and indorsed to the defendant bank, and that the transaction between it and Allis, its president, was perhaps voidable. As the Little Rock Bank had an undoubted right to purchase the notes even from its president, the plaintiff was entitled to act upon the presumption, in the absence of knowledge to the contrary, that they had been lawfully acquired through the agency of some disinterested person or persons who were authorized to represent the defendant bank. So far as we can see, there was nothing on the face of the notes, or in the correspondence relating to the same, which tended to rebut such presumption or to put the plaintiff on inquiry.

For these reasons we are forced to conclude that the circuit court erred in instructing the jury, as it did, in substance, that the notes in suit gave notice to the plaintiff when it received them for discount, that they were the property of Allis, and that he had indorsed them in the name of the defendant bank, for his own benefit, and probably without authority. That view of the case, which was the sole reason that induced the trial court to instruct the jury to return a verdict for the defendants, derives no support from the case of West St. Louis Savings Bank v. Shawnee County Bank, 95 U. S. 557, on which much reliance appears to have been placed by the trial court. In the latter case, the cashier of a bank borrowed money from another bank on his individual note for his own benefit, and indorsed the note in the name of the bank with which he was connected. The bank from whom the money was borrowed understood at the time that the money was to be used by the cashier for his own benefit, and that the indorsement placed on the note was an accommodation indorsement. It was held that the indorsement created no liability against the corporation whose name had been thus placed upon the paper as indorser, without authority, by its cashier. It is hardly necessary to observe that no such case is presented by the present record. In the suit at bar, the defendant bank itself offered the notes in suit for rediscount; the request for the discount was made by its president and cashier, each acting in an official capacity; the offer was accompanied with a satisfactory excuse for seeking a rediscount,—such an excuse as would naturally disarm suspicion. Moreover, the paper offered for rediscount appeared to have been regularly indorsed to the defendant bank; it was ostensibly in its possession, and the proceeds of the discount were passed to its credit and were subsequently paid out on its checks. Under these circumstances, it cannot be said that the plaintiff acted in bad faith, or that it was affected with notice that the Little Rock Bank was merely an accommodation indorser. Murray v. Lardner, 2 Wall. 110, 121; Hotchkiss v. Bank, 21 Wall. 354, 359.

It is insisted, however, that the judgment of the circuit court was

for the right party, and that it ought not to be disturbed, even though the theory upon which the instruction was given was erroneous, and even though the plaintiff had the right to assume, when it discounted the notes in suit, that they belonged to the defendant bank and were being discounted for its benefit. The substance of the argument in this behalf is as follows: It is said that the transaction between the two banks, whereby the plaintiff bank acquired the paper, was either a loan to the defendant bank of $31,871.27, that sum being the proceeds of the discount of December 16, 1892, or that the transaction was a rediscount; that, in either event, the transaction was so far outside of the usual course of banking business, as ordinarily conducted, that neither the president nor the cashier of the defendant bank had any authority to enter into the negotiation without the prior sanction of its board of directors. Hence it is urged that the plaintiff's title is defective; that it did not acquire the paper in the usual and ordinary course of business; and that it is not a bona fide holder, because the board of directors of the Little Rock Bank did not authorize the loan or rediscount or subsequently ratify it. The proposition last stated appears to be mainly founded on the decision in Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, which decides, in substance, that the borrowing of money by a national bank, though not illegal, is so much out of the course of ordinary and legitimate banking business as to require those making the loan to see to it that the officer or agent acting for the bank has special authority to borrow money. With reference to this contention, and, as a reason for refusing to consider it upon the merits at this time, we remark, in the first place, that no such question appears to have been considered and decided by the trial court, and, in the second place, that the answer filed by the defendants did not, as we think, fairly present such a defense. The answer undoubtedly raised the issue that was decided by the circuit court, that is to say, it denied that the notes described in the plaintiff's complaint were ever indorsed and delivered to the defendant bank; it denied that said notes were ever the property of or in the possession of said bank; it denied that said bank ever indorsed or delivered the notes to the plaintiff, or that said bank ever received any consideration for the indorsement and delivery of the same. On the other hand, the defense attempted to be made in this court is of a contradictory character, in that it concedes the ownership and possession of the paper by the defendant bank, and attempts to avoid the sale of the notes to the plaintiff, on the ground that its president and cashier acted without authority, express or implied, in making the sale. We think that the answer was insufficient to raise a defense of this character, and that the judgment cannot be supported in this court upon the ground last above stated.

An attempt is also made in this court to sustain the judgment below on account of certain alleged defects in the proceedings taken at the maturity of the notes in suit, to fix the liability of the defendant bank as an indorser thereon. The notes were each made payable at the First National Bank of Little Rock, Ark. The answer averred that, at the maturity of the paper, said bank had ceased to do business, that the makers of the notes resided in Little Rock, and that no

demand was made upon them for payment, and that no notice of dishonor was given to any person who was authorized to receive such notice for and in behalf of the defendant bank.    While the answer contained this allegation as to the insufficiency of the demand and notice of dishonor, yet the defense so pleaded seems to have been abandoned at the trial.   No objection was made to the several certificates of protest when they were introduced in evidence, and no instructions were either asked or given touching the adequacy of the proof to fix the liability of the defendant bank as an indorser. If, instead of a verdict in its favor, a judgment had been rendered against the defendant, it is clear that the alleged defect in the proceedings taken to fix the indorser's liability, which is now relied upon to sustain the judgment, would not have been available in this court as a ground for reversal.   We think, therefore, that, under these circumstances, the supposed defect last mentioned will not serve to support a verdict that is otherwise clearly erroneous.   It is a mistake to suppose that a defense which was clearly abandoned at the trial can be invoked in an appellate court to sustain a judgment that was rendered in pursuance of an erroneous view as to the merits of some other defense.   For the reasons heretofore indicated, the judgment is reversed, and the case is remanded, with directions to award a new trial.