FIRST NAT. BANK OF DUNCAN v. ANDERSON.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1905.)

No. 2,152.

1. BILLS AND NOTES—INDORSEMENT FOR PURPOSE OF TRANSFER—LIABILITY OF INDORSER.

Where the cashier of a national bank, acting as plaintiff's agent, with full power to invest her money, made a loan thereof to a third person, taking his note therefor payable to the bank, which on the same day transferred it to plaintiff by indorsement, without receiving any consideration therefor, such indorsement was merely for plaintiff's accommodation, and gave her no right of action to recover the amount of the note from the bank.

2. SAME—CONSIDERATION OF INDORSEMENT.

The mere fact that the borrower deposited the money borrowed in his account in the bank, and thereafter paid from it certain notes he owed to the bank when they matured, did not constitute a consideration for the indorsement of the note.

In Error to the United States Court of Appeals in the Indian Territory.

For opinion below, see 82 S. W. 692.

Potter, Bowman & Potter, for plaintiff in error.

William I. Gilbert and Edward H. Bond, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. Lou Anderson, plaintiff below and defendant in error here, instituted this suit in the United States Court in the Indian Territory, Southern District, against the First National Bank of Duncan, plaintiff in error, to recover $1,666.10, balance alleged to be due her on a certain promissory note made by one J. A. Thomas on July 11, 1900, payable to the order of the bank and by it on the same day indorsed and delivered to her. The answer tendered the issue that the bank's indorsement was solely for the accommodation of the plaintiff and without any consideration moving it thereto. On the issues so tendered the defendant, admitting plaintiff's prima facie right of recovery, assumed the burden of proving the affirmative defense set up in the answer. The case was tried to a jury, and resulted in a verdict and judgment for plaintiff for the amount sued for with interest. The United States Court of Appeals in the Indian Territory, after a consideration of the case, affirmed the judgment, and it is now before us on writ of error to secure a reversal of the case.

The main and important assignment of error is that the trial court erred in not directing a verdict at the close of the evidence in favor of the defendant, and that the United States Court of Appeals in the Indian Territory erred in not so ruling. The facts are simple: J. T. Jeans, the cashier of defendant bank, is practically the only witness as to the material facts determinative of the right of recovery. He testifies, in substance, that the plaintiff, a relative of his wife, who either had money on deposit in his bank or was about to collect some, requested him to invest it for her so that she could get "something out of it." He represented to her that J. A. Thomas, a farmer and cattle dealer, would like to borrow it, and testifies that he went over the matter with Thomas; took a list of his collateral and submitted the whole matter to the plaintiff and asked her what she wanted him to do about it; she said she would leave it all to him; that whatever he thought best, to go ahead and do it.

The foregoing evidence is without any contradiction and establishes beyond question that the plaintiff constituted Jeans, the cashier of the bank, her agent, with unlimited discretion to invest her money for her. Pursuant to this authority Jeans made the loan of $2,000 to Thomas for one year, taking his note for the principal, with interest at the rate of 2 per cent. per month added, making the face of the note $2,480. This note was made payable to the order of the bank and

forthwith indorsed and delivered to plaintiff. Jeans explains that the reason for making the note payable to the bank, instead of to the plaintiff directly, was that in case the maker, Thomas, should be disposed to plead usury, owing to the unwarranted interest contracted for, a suit in the name of the bank would, in some manner imperceptible to us, afford immunity against such a plea. However that may be, the note was in fact made payable to the order of the bank, and according to the allegations of the complaint and in harmony with the proof the bank on the day of its date, "transferred and indorsed it to the plaintiff." On the same day, July 11, 1900, the maker, Thomas, made and executed a chattel mortgage conveying a large number of cattle, hogs, mules, and horses to plaintiff directly, as collateral security for the payment of the note in question. The evidence permits of no doubt that the money which formed the consideration for the note belonged to plaintiff; that she authorized Jeans, the defendant's cashier, to make the loan in question to Thomas; and that he acted as her agent with plenary powers in the transaction. The indorsement in question was only a means, inspired by questionable motives, doubtless, of transferring the legal title to the note to plaintiff in whom the equitable right belonged. The indorsement, therefore, was only for the accommodation of the plaintiff, and can, in and of itself, afford no right of recovery in this case. West St. Louis Savings Bank v. Shawnee County Bank, 95 U. S. 557, 24 L. Ed. 490; Western National Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572, 38 L. Ed. 470; United States National Bank of New York v. First National Bank of Little Rock, 13 C. C. A. 472, 64 Fed. 985; State National Bank v. Newton National Bank, 14 C. C. A. 61, 66 Fed. 691.

The other question requiring attention is whether the bank received a consideration for its indorsement. There is no claim that it did so directly; that plaintiff either paid anything to the bank or understood that the bank was getting anything for its indorsement. The proof shows that at the time Thomas borrowed the money from the plaintiff he was a depositor in the defendant's bank and was indebted to the defendant on some notes; that on borrowing this money from the plaintiff he deposited it to his individual credit with the bank, and subsequently paid off his indebtedness to the bank represented by notes in the amount of $700 to $1,400. The exact sum does not appear. From these and other facts to which attention will be called, it is sought to justify the verdict on the ground that this payment by Thomas of his indebtedness to the bank in some manner operated as a consideration for defendant's indorsement of Thomas' note. There is nothing in the bare fact that the bank required Thomas to pay his matured obligations. Such is a necessary and daily occurrence in all well managed banks. The bank got nothing by the transaction except the payment of a loan, and after its payment the loan was no longer an asset. The result left the bank in the same condition as to assets and liabilities as it was before. But the theory suggested or insinuated in the cross-examination of witness Jeans is that because Thomas paid his loans to the bank soon after receiving plaintiff's money, and because some eight or ten months thereafter he (Thomas) failed in business, as is shown

by the evidence, therefore it must have been a part of the purpose of the cashier of the bank in negotiating the loan to Thomas to put him in funds with which to pay a doubtful debt owing by him to the bank. This theory, in our opinion, is not warranted by any substantial evidence.

It is true there is some evidence tending to show that Thomas was, and had been for a long time, addicted to drinking and gambling, and was in these respects regarded as reckless; but according to the undisputed evidence he enjoyed good financial credit at the time his note was taken. Eight months afterward, in March, 1901, he became financially involved, had to borrow more money, and later became a fugitive from justice. But these facts have no legitimate bearing upon the issue whether the defendant, at the time of indorsing the note in question, received a valuable consideration therefor. All this evidence and other like evidence could only have afforded a basis for unwarrantable speculation and conjecture, and is not sufficient upon which to base an intelligible finding or to warrant a recovery in an action at law. Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 49 C. C. A. 244. Moreover, the evidence shows that soon after the bank received payment of its notes from Thomas it allowed him the privilege of overdrawing, and that he exercised it to such an extent that by March, 1901, he was indebted to the bank on overdrafts in the sum of $600 to $800. This fact is inconsistent with the theory of plaintiff's counsel that the bank induced the plaintiff to loan her money to Thomas for the real purpose of enabling it to secure payment of an imperiled loan theretofore made to Thomas. If the bank was, in July, 1900, distressed over the fact of Thomas' indebtedness to it, we can conceive of no reasonable likelihood of its soon afterwards voluntarily permitting him to become a creditor in practically an equal amount as before.

The testimony of witness Jeans presents a consistent and reasonable theory of the case; one in full accord with human experience. The plaintiff, Mrs. Anderson, was not called upon to contradict it in any way. By fair inference, therefore, she should be held to admit its substantial truth. The defense is not only supported by substantial evidence, but it is in harmony with the law governing national banks. As already observed, the law prohibits them from indorsing any paper merely for the accommodation of another; and common honesty, which should, in the absence of substantial proof to the contrary, be imputed to them, rather than the dishonest and unworthy purpose charged by the plaintiff, renders the other phase of the plaintiff's contention improbable.

We do not deem it necessary to further discuss the testimony. It is sufficient to say we have given it a careful perusal and consideration, and taking it all together we fail to find any substantial evidence contradicting the testimony of Jeans to the effect that he acted solely as the agent of the plaintiff in negotiating the loan to Thomas, and that the bank received no consideration whatever for its indorsement of the note in question.

The trial court, therefore, should have directed a verdict in favor of the defendant, as requested at the close of the evidence, and the United

141 F.—59

States Court of Appeals in the Indian Territory should have reversed the judgment of the lower court because of its failure to give that instruction. The judgment will therefore be reversed, and the cause remanded to the United States Court in the Indian Territory, Southern District, with instructions to grant a new trial. It is so ordered.