(80 South. 440)

### LONG et al. v. GWIN. (6 Div. 740.)

(Supreme Court of Alabama. Nov. 28, 1918.)

1. BILLS AND NOTES ⬯489(7)—PLEADING—"BILL SINGLE."

A "bill single" was an unconditional written promise to pay money, under seal of the obligor technically distinct from a promissory note, although identical in form, so that a declaration on one was not supported by proof of the other; but this law of variance has been abrogated by Code 1907, § 4963, declaring "the validity and negotiable character of an instrument are not affected by the fact that * * * it * * * bears a seal."

[Ed. Note.—For other definitions, see Words and Phrases, Single Bill.]

2. BILLS AND NOTES ⬯43 — SCROLL AFTER SIGNATURE—SEALED INSTRUMENTS.

The mere addition of a scroll after the signature on a note, without words of reference or adoption in the note itself, did not make it a sealed instrument.

3. BILLS AND NOTES ⬯243—EVIDENCE ⬯423(6)—STATUS OF SIGNERS—INDORSERS—NEGOTIABLE INSTRUMENTS LAW.

Under Negotiable Instruments Law (Code 1907, §§ 5018, 5022, and section 4974, subd. 6), persons merely signing on the back of a note before delivery are indorsers conclusively as to subsequent holders in due course, but only prima facie as to the immediate parties, subject to oral testimony to show them comakers.

4. EVIDENCE ⬯472(1)—SIGNATURES—CHARACTER OF LIABILITY—CONCLUSION OF WITNESSES.

Upon the issue as to whether persons who signed on back of a note were comakers or indorsers, it was error to permit witnesses to state, as a mere conclusion, that they signed as comakers; this being the question in issue.

5. BILLS AND NOTES ⬯396 — LIABILITY OF INDORSERS—NOTICE OF DISHONOR—INSTRUCTIONS.

Unless notice of dishonor is seasonably given to indorsers, they are released from liability.

6. RELEASE ⬯28(4)—PARTIES—RESERVATION—CONSTRUCTION OF RIGHTS AGAINST OTHER PARTIES.

Written releases of certain parties to a note by payee, reciting that they "shall in no wise affect the rights and demands of the plaintiff against the other joint defendants," release only the releasees, in view of Code 1907, § 3973, providing releases "must have effect according to the intention of the parties thereto."

7. BILLS AND NOTES ⬯92(1) — CONSIDERATION.

A note given to a third party for money borrowed by its makers and indorsers to pay the debt of a corporation, and not as security for that debt, is founded upon a legal consideration, regardless of use made of the money.

Appeal from City Court of Bessemer; G. F. Goodwyn, Special Judge.

Action by J. C. B. Gwin against R. H. Long and others upon promissory note. Judgment for plaintiff, and defendants Long and Newman appeal. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

The complaint declares for money due by bill single made by the defendants Newman and Long. The instrument offered in evidence is a promissory note negotiable and payable at Bessemer State Bank, signed by

---

G. H. Smith, J. T. Busby, and T. F. Johnson on its face, and the names of these defendants and nine others are signed on its back. In this condition the note was given as security for money borrowed from plaintiff for the use of the Farmers' U. W. & P. Company, a corporation in which all these parties were interested as officers or stockholders. Defendants objected to the admission of the note on the grounds that it showed a variance from the complaint; that defendants were sued as joint makers, and the note showed them to be indorsers; that the complaint contained no allegation that these prima facie indorsements were intended as primary signatures; and that no proof had been offered of notice to defendants of dishonor after due presentment to the makers. This objection was overruled. The chief issue of the fact before the jury was whether these defendants signed. the note with the intention and understanding that they were signing as comakers or only as indorsers, and the testimony on this question was in sharp conflict. Several parties who signed the note on the back were allowed, over the defendants' objection, to testify that they signed it in the capacity of makers; and that also each of the defendants signed it in the capacity of the maker.

In its oral charge to the jury, the court stated as follows:

(1) The law says that a maker of a note may sign the note on the back thereof, or anywhere else, and thereby become a joint maker of such note, without any words of explanation placed on the note, or attached thereto, to indicate the capacity in which he signs it. It is not necessary to fix liability on him as a maker that he should sign at the foot; he may sign on the back and be liable as a maker.

(2) "The signing of a note on the back, while it raises a prima facie presumption that he is an indorser who signs his name there, is not conclusive that he signs as an indorser. This presumption may be overcome by the evidence."

The defendant requested numerous instructions which were refused, but which sufficiently appear from the opinion.

Huey & Welch, of Bessemer, for appellants.

Pinkney Scott, of Bessemer, for appellee.

SOMERVILLE, J. [1, 2] At common law a "bill single" was an unconditional written promise to pay money, under the seal of the obligor. It was not negotiable, and, though identical in form with a promissory note, it was technically distinct, so that a complaint declaring on the one instrument was not supported by proof of the other. McCrummen v. Campbell, 82 Ala. 566, 2 South. 482; Davis v. McWhorter, 122 Ala. 570, 26 South. 119.

This has been changed, and this law of variance abrogated, by the Negotiable Instruments Law, which declares that—

"The validity and negotiable character of an instrument are not affected by the fact that * * * it * * * bears a seal." Code 1907, § 4963.

The mere addition of a scroll after the signatures on this note, there being no words of reference or adoption in the note itself, did not make it a sealed instrument. Lytle v. Bank of Dothan, 121 Ala. 215, 26 South. 6.

Its designation as a "bill single" in the complaint was therefore a misnomer, but wholly without legal significance, so far as this case is concerned. To hold that it still works a fatal variance between pleading and proof, in spite of the statutory change referred to, would be an absurd and intolerable technicality.

[3] On a former appeal of this cause, we ruled that parol evidence was admissible to explain the character of the signatures placed on the back of the note, and to overcome their prima facie intendment as indorsements by showing that they were in fact intended as primary signatures to the note by comakers thereof. Long v. Gwin, 188 Ala. 196, 66 South. 88. In the opinion in that case there was no allusion to the provisions of the Negotiable Instruments Law, and it is now insisted that some of these, especially sections 5018, 4974 (subd. 6), and 5022, of the Code, forbid the use of parol evidence to show that a prima facie indorsement was intended as a primary signature to the note.

Section 5018 is:

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Section 4974, subd. 6, is:

"Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

Section 5022 is:

"Where a person places his indorsement on an instrument negotiable by delivery he incurs all the liabilities of an indorser."

Prior to the adoption of the Negotiable Instruments Law in the several states, an irregular indorsement—that is, an indorsement by one not otherwise a party, before the delivery of the instrument—was variously regarded as creating the liability of indorser, second indorser, maker, guarantor, or surety. 8 Corp. Jur. p. 74, § 121. The purpose of the new law was to give a uniform status and effect to such indorsements. But we think that purpose is sufficiently accomplished by holding that the declared status is conclusively fixed as to subsequent holders in due course, but only prima facie fixed as to immediate parties. This is in harmony with the theory prevailing heretofore in this and

other states, and better meets the requirements of justice than the rigid rule which forbids any inquiry into the real contract of the parties as shown by their antecedent declarations, their course of dealing, or the attendant circumstances.

In other jurisdictions, the courts are not in harmony in their application of the rule under the provisions of the Negotiable Instruments Law. The rulings are stated and the authorities collected in 8 Corp. Jur. p. 75, § 122, and we deem it unnecessary to discuss the subject further. We adhere to our ruling in this case on the former appeal, which is in no wise affected by any of the provisions of the Negotiable Instruments Law, as we now construe them.

[4] But, although parol evidence was admissible to show that defendants' names were written on the back of the note as comakers, and not as indorsers, nevertheless the trial court palpably erred in allowing plaintiff's witnesses to state, as a mere conclusion of their own, that defendants so signed. That was the issue—the decisive issue—to be determined by the jury from the evidence, and witnesses should have been restricted to stating the facts attendant upon and leading up to the transaction, from which the jury could reach their own conclusion.

[5] If defendants signed as indorsers, then they could be charged with liability only upon plaintiff's seasonable presentment of the note to its makers for payment, followed by notice to defendants of its dishonor. This was a vital question in the case, and the trial court therefore erred in refusing to give at defendants' request charge 22:

"That notice of dishonor must be given to each indorser on a negotiable note, and, if such notice of dishonor is not given, such indorser is discharged from liability on such note."

So, also, there was error in refusing to give for defendant Long, as requested, charge 6:

"That if the note introduced in evidence in this case stood alone and unexplained, the law would hold that R. H. Long was only an indorser of the note."

[6] Defendants pleaded their discharge from liability by reason of plaintiff's release and discharge of some of defendants' comakers or coindorsers. The written releases introduced in evidence recite that they "shall in no wise affect the rights and demands of the plaintiff against the other joint defendants." This saving clause preserved plaintiff's right to proceed against the other joint obligors, and the release amounted to no more than a covenant not to sue the releasees. Browning v. Grady, 10 Ala. 999; Carroll v. Corbitt, 57 Ala. 579, 581; 34 Cyc. 1083, 1085. As pointed out in Carroll v. Corbitt, supra, this results from our statute (Code, § 3973), which provides that releases "must have ef-fect according to the intention of the parties thereto." This assumes, of course, that its stipulations do not contravene the legal rights of other parties. But, where, as here, each joint obligor is also severally liable for the whole debt, his only right in the premises is to compel contribution from his co-obligors, and that right he retains unimpaired as a necessary result of his own continued liability.

[7] Certainly he cannot complain of the obligee's resort to himself, to the exclusion of his co-obligors, in the enforcement of the obligation.

This note was given to a third party for money borrowed by its makers and indorsers to pay the debt of the corporation, and not as security for that debt. Hence it was founded upon a legal consideration, regardless of the use made of the money. Instructions to the contrary were properly refused.

For the errors pointed out above, the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.