251 So.2d 575

Christina Elizabeth CLIKAS and Emalyne Knoll Clikas

v.

Samuel S. STEELE, E. N. Merriwether, and Gulf Development Company, Inc., a Corporation.

I Div. 658.

Supreme Court of Alabama.

Aug. 5, 1971.

Gaillard, Wilkins & Smith, Mobile, for appellants.

Diamond & Lattof, Mobile, for appellees.

HARWOOD, Justice.

Suit below was on a promissory note, dated 31 July 1961, executed by Gulf Development Company, Inc., by E. N. Merriwether, and payable to Samuel S. Steele. On the back of the note is a more or less standard endorsement provision, and immediately following this provision appears the signature of E. N. Merriwether.

Below Merriwether's signature there is typed, "Pay to the order of Christina Elizabeth Clikas and/or Emalyne Knoll Clikas," with Samuel S. Steele's signature thereunder.

Gulf Development was sued as maker of the note, and Merriwether and Steele as endorsers thereon.

Some ten pleas were filed to the complaint. Plea 1 was a plea of the general issue. Demurrers were filed to the remaining pleas, that is, 2 through 10.

The court sustained the demurrers to all of the pleas except pleas 3, 4, 8, and 10, and as to these pleas the demurrers were overruled. These four pleas will be hereinafter set out when respectively discussed.

The plaintiffs filed a replication to plea 10, asserting that:

"1. Plaintiffs join issue with the defendant's plea," and

"2. Plaintiffs aver that the defendant has not paid the balance due on the note of Dixie Engineering Company of Montgomery."

Thereafter, the cause came on for hearing before the court sitting without a jury. After such hearing, the court entered two judgments, one in favor of the plaintiffs and against the defendants Gulf Development Company, Inc., and E. N. Merriwether, for the sum of $10,970.16, and a second judgment in favor of the defendant Steele.

The plaintiffs below have perfected this appeal from the judgment in favor of the defendant Steele.

Since the parties occupy the same position in this appeal that they did in the court below, we will continue to refer to the appellants as plaintiffs, and the appellee Steele as the defendant.

In the hearing below Tony M. Clikas testified that in the summer of 1960, as Chairman of the Loop Optimist Christmas Tree Committee, he had contacted Steele in reference to renting a lot controlled by Steele for the purpose of selling Christmas trees. During their conversation, Steele, who was a mortgage broker, suggested the purchase of a mortgage by Clikas, but Clikas told him he was unable at that time to purchase a mortgage.

According to Clikas, between July 1960 and July 1961, Steele attended a good many meetings of the Loop Optimist Club, either as a member, honorary member, or guest, and during this time Steele discussed with him several times the purchase of a mortgage.

In July of 1961, Clikas again contacted Steele in reference to renting the lot. Steele again initiated a discussion as to Clikas buying a mortgage, and sketched out on a pad the terms of the mortgage.

At this time Clikas reached an agreement with Steele to purchase a construction loan mortgage to be executed by Gulf Development Company or E. N. Merriwether, who apparently was principal owner of Gulf Development. Clikas knew at this time that Merriwether was considered of substantial financial worth.

Clikas was to pay $7,600.00 for an $8,000.00 mortgage and note, the $400.00 discount being because of the risk involved. The loan was payable in 120 days, and was to bear 6% interest. The estimated return as computed by Steele was 22% on this particular mortgage.

Clikas instructed Steele that he wanted the note and mortgage to be in the names of "Mrs. Emalyne K. Clikas and/or Miss Christina Elizabeth Clikas," these parties being his wife and daughter. The money with which to purchase the mortgage belonged jointly to Clikas and his wife. His daughter Christina was 15 years of age at the time.

Either on 31 July 1961, or the day before, Clikas went to Steele's office to complete the purchase of the mortgage. He testified that at this time Steele had the note which had been endorsed by E. N. Merriwether. At his insistence, Steele also endorsed the note, and Clikas then wrote out a check payable to Title Insurance Company of Mobile, which company was to handle the closing of the transaction.

Clikas denied knowing that Steele was to receive a brokerage fee. He testified that he did not know that a portion of the purchase price money was to be held in escrow by Steele and disbursed to Gulf Development Company in installments upon receipt of F.H.A. approvals. He later testified otherwise to the effect that Steele was to hold all of the purchase price money back which was to be disbursed at Steele's discretion.

When the note was not paid after maturity, Tony Clikas and Steele engaged in a series of transactions extending over a period of several years, during which several extensions of time for the payment of the note were granted. Not until shortly before this suit was filed, and after an attorney was consulted, did the Clikases assert any liability on the note by Steele.

Payments were made by Steele to the plaintiffs, at first out of the escrow funds in his hands from the original loan, and later from amounts paid by Dixie Engineering Company, which company was under Merriwether's control.

It appears that in early 1964, Gulf Development Company developed severe financial difficulties. Steele devised a plan, agreed to by Merriwether, that Dixie Engineering Company would execute and deliver to Steele promissory notes payable to various holders of Gulf Development Company mortgages, including the plaintiffs.

Dixie's note, in the amount of $7,162.07, was payable to the plaintiffs pursuant to this plan. This note was delivered to Steele, and several payments were made thereon, the last being on 22 August 1965. These payments were forwarded to the plaintiffs.

The original mortgage was never cancelled of record, and the original note given by Gulf remained in possession of the plaintiffs and was never marked paid. The Dixie note remained in possession of Steele.

Mrs. Clikas testified that her husband represented her in business affairs and had full authority to act in her behalf.

Christina Clikas (now Currie) testified that her father had handled various business transactions for her, some while she was a minor, and she did not repudiate anything he had done while she was a minor, and now that she was of age she ratified anything he had done for her or in her name.

In his own behalf Steele testified that upon their meeting in 1960, when Clikas had come to him about obtaining the lot for the Optimist Club Christmas tree sale, he had inquired of Clikas if he was interested in buying a mortgage. Clikas told him he was not at that time interested.

At their second meeting in reference to obtaining the lot, he again asked Clikas if he was interested in buying a mortgage, and Clikas asked him if he was still handling Gulf Development mortgages.

He told Clikas what the yield would be on a Gulf Development mortgage, that is a little better than 22% on the money loaned counting the discount of $400.00. Steele's only interest in the transaction was a brokerage fee of 2% for selling a mortgage. He was in no way connected with Gulf Development Company.

He explained to Clikas that of the $7,600.00 purchase price of the $8,000.00 mortgage 50% would be disbursed on the first F.H.A. inspection, and the remainder would be kept in escrow pending a second F.H.A. inspection when 25% of the remaining escrow fund would be paid, and the remaining escrow balance would be paid on the final F.H.A. inspection.

After this conversation with Clikas, Steele called Gulf Development Company and they told him they would have a mortgage on Lot 92 available shortly and would let him know when they were ready to close the transaction so his client (Clikas) could bring in the funds.

Steele called Clikas on 30 July 1960, and Clikas came into his office on 31 July 1960.

At this time he asked Clikas who was to take title to the mortgage and note, and Clikas inquired how he normally handled such matters. Steele told Clikas he could make out the mortgage and note to whomsoever he wished—that one of his clients in purchasing mortgages had the mortgage and note made out to Steele in order that the client's name would not appear on the "pink sheet," (a report of various legal transactions and proceedings) and he would then assign the mortgage and note to whoever was designated. Clikas told him to handle it the way he had for his other clients. Clikas gave him the names of "Christina Elizabeth Clikas and/or Emalyne Knoll Clikas" as mortgagees and payees, which were written out.

Clikas then executed his check in the amount of $7,600.00, payable to Title Insurance Company.

On that same day Steele took the check to the offices of Title Insurance Company to complete the transaction. He had neither the note nor the mortgage at this time.

Steele testified that he had been a mortgage broker and real estate broker for some years, but that he did not know at the time of the transaction that by placing his signature on the back of a note without limiting language that he thereby became legally bound to pay the note, though he was aware of this at the time of the trial.

The mortgage was made to Samuel S. Steele, as mortgagee, and the note secured by the mortgage named Steele as payee.

The closing of the transaction was handled by Charles Cunningham who at that time was attorney with the Title Insurance Company.

Cunningham testified he would not have delivered the mortgage and note to Steele until the proceeds of the mortgage were in his possession.

The records of Title Insurance Company (plaintiffs' Exhibit No. 7) showed that $7,600.00 had been paid to Title Insurance Company by Tony Clikas, and that a portion of these proceeds had been disbursed paying off a vendor's lien, and certain other fees and service costs, including a brokerage fee to Steele. After these payments there was left a balance of $4,000.00 which was to be released by Steele to Gulf Development as building of the house progressed, and upon inspections by F.H.A.

Cunningham was aware that the proceeds of the loan came from Clikas, and that no funds came from Steele. Neither Mr. nor Mrs. Clikas were present at the closing of the transaction.

The assignment of the mortgage was recorded one day after the mortgage was recorded, for the reason that the recording data could not be inserted in the transfer until after the mortgage was recorded. It was possible the mortgage and transfer could have been delivered at the same time, though he had a notation on the record not to record the transfer (apparently meaning until after the mortgage was recorded).

Cunningham testified that when he saw the note in question it had only the endorsement of E. N. Merriwether on it, and he could not recall ever having seen at this time an endorsement by Steele "subsequent" to a Merriwether endorsement.

Steele was in the mortgage brokerage business and invariably took mortgages in his own name and either simultaneously or at a later date assigned them to various people. On each occasion Steele would receive a brokerage fee. It is customary for the mortgagor to pay the expenses connected with a mortgage loan, and in this instance a broker's commission in the amount of $160.00 was disbursed by Title Insurance Company to Steele out of the proceeds of the loan. Steele was the largest single broker of Gulf Development Company mortgages in Mobile.

**276**

Plaintiffs' assignment of error No. 2 asserts error in the action of the court in overruling plaintiffs' demurrer to Steele's plea No. 3. This plea reads:

"There was no consideration for said endorsement, and this defendant is not liable thereunder."

In support of this assignment plaintiffs rely upon McAfee v. Glen Mary Coal and Coke Co., 97 Ala. 709, 11 So. 881. In said case the note was executed by three parties, one of which was McAfee. Only McAfee was sued on the note. The defendant filed a plea that "there was no consideration to defendant for the note or obligation which is the foundation of this suit." It was held that demurrer to the plea was properly sustained in that the plea failed to negate consideration moving to the co-maker, which would support the obligation though McAfee received nothing.

The present suit sought to hold Steele liable on his individual act as an endorser. His plea asserted there was no consideration for his endorsement.

In Giles v. Williams, 3 Ala. 316, it was held that a plea that a note or bond "was given without any consideration" was sufficient. The court observed:

"* * * it is not possible to plead or state that affirmatively, which has no existence."

A plea "that said note was given by defendant's intestate wholly without consideration" was held to be a good plea in Milligan v. Pollard, 112 Ala. 465, 20 So. 620.

In Ragsdale v. Gresham, 141 Ala. 308, 37 So. 367, a plea of no consideration reading "there was no consideration for the order upon which said cause of action is founded" was held a good plea, and the ground of demurrer to the plea that it did not show in what manner consideration was lacking was properly overruled.

In Armstrong v. Walker, 200 Ala. 364, 76 So. 280, the suit was on a promissory note against the maker. Defendant's plea No. 2 was, "there was no consideration for the note sued on." As to this plea the court wrote:

"According to apt authority of (citations omitted) the plea was not subject to any possible ground of demurrer. It was therefore error to sustain demurrer to it." (Par. ours.)

We hold that under the above authorities no error resulted from the court's action in overruling the demurrer to defendants' plea No. 3.

Assignment of error No. 3 alleges error because of the court's action in overruling plaintiffs' demurrer to plea No. 4. This plea reads:

"The maturity date of the note sued upon was extended by the plaintiffs without the consent of this defendant, and this defendant is not liable thereunder."

It is plaintiffs' contention that "the plea does not state that the extension was by an agreement binding on the holder."

We find no grounds of the demurrer which might relate to plea 4 raising the deficiency in the plea now asserted by the defendant on this appeal.

The plea does state that the note sued on was extended by the plaintiffs. It would be hypertechnical to conclude under such an allegation that plaintiffs did not agree thereto.

The plea seeks to set up defendant's discharge as a person secondarily liable under the provisions of Section 116(6), Title 39, Code of Alabama 1940, to the effect that a person secondarily liable on an instrument is discharged by any agreement binding on the holder to extend the time of payment, unless made with consent of the person secondarily liable, and unless the right of recourse against such party is expressly reserved. It would appear that the plea sets up this defense.

No error resulted in the overruling of the demurrer to plea 4.

■ Assignment of error No. 4 goes to the actions of the court in overruling plaintiffs' demurrer to defendant's plea No. 8, which reads:

"The money which formed the consideration for the note belonged to the Plaintiffs, and the Plaintiffs authorized the Defendant, SAMUEL S. STEELE, to make the loan in question to said GULF DEVELOPMENT COMPANY, INC., and requested him to take title in his name for the Plaintiffs, and that said SAMUEL S. STEELE acted as agent for the Plaintiffs in said transaction and the said endorsement by said SAMUEL S. STEELE was made for the sole purpose of vesting title in the true owners, the said Plaintiffs, and this Defendant is not liable thereunder."

The grounds of the demurrer addressed specifically to plea 8, are to the effect that the plea fails to state that Steele was authorized to *endorse* the note as agent for the plaintiffs.

In brief counsel for plaintiffs argue that the plea alleges only that Steele was authorized to do the primary act, that is, arrange or make a loan for the plaintiffs, and that the plea fails to allege that Steele was authorized to do the secondary act, that is, endorse the note to the plaintiffs. Counsel for plaintiffs relies upon Waugaman v. Skyline Country Club, 277 Ala. 495, 172 So.2d 381, and Hanover Fire Insurance Co. v. Wood, 209 Ala. 380, 96 So. 250. A reading of these cases shows that the secondary act performed by the agent was distinct from the primary act of agency.

Plea 8 asserts that the plaintiffs authorized Steele to make the loan in question and requested him to take title in his name for the plaintiffs, that Steele acted as agent for the plaintiffs in said transaction and his endorsement was made for the sole purpose of vesting title in the plaintiffs.

In 3 Am.Jur.2d, Agency, Section 63, it is stated:

"The authority of the agent is the very essence—the sine qua non—of the principal and agent relationship, and has been defined as the power of the agent to affect the legal relations of the principal by acts done in accordance with the principals' manifestations of consent to him. This authority, unless it is otherwise agreed, includes only authority to act for the benefit of the principal, and the source of the authority is always the principal, and never the agent."

In Bell-Wayland Co. v. Bank of Sugden, 95 Okl. 67, 218 P. 705, the rule is enunciated that there is no implied authority in an agent to endorse commercial paper unless such endorsement was positively needful to the main duties contemplated by the express authority.

Having authority to make the loan for the plaintiffs and take the mortgage and note in his own name, it was essential in order to vest title to the papers in the plaintiffs that after having so done, that Steele endorse the papers to the plaintiffs, the true owners. Steele's act imposed no liability on the plaintiffs, but on the other hand, conferred a benefit to them, and was necessary to vest title in the plaintiffs.

We hold that the lower court did not err in overruling the plaintiffs' demurrer to plea 8, in that under the allegations of the plea Steele had implied authority in his duties as agent to endorse the note to the plaintiffs.

■ Assignment of error No. 5 asserts error in the action of the court in overruling plaintiffs' demurrer to plea 10. Said plea reads:

"The Plaintiffs heretofore and on, to-wit, the 18th day of March, 1964, accepted a note of Dixie Engineering Corporation of Montgomery, a corporation, in full satisfaction of said note sued upon, and said note sued upon was there-

by discharged, and this Defendant is not liable thereunder."

It is the contention of counsel for the plaintiffs that this plea is conclusionary; no facts are averred showing the nature of the acceptance of the Dixie Engineering Corporation note; no facts are stated concerning any agreement between all the parties to a new contract; that there is no averment that the new note was an extinguishment of the old obligation, or that the new obligation was a valid one between the parties thereto.

The plea is perhaps lacking in preciseness. However, the question of novation was fully presented by evidence introduced in the hearing.

We will not therefore reverse for error that may have resulted from the court's ruling, for as stated in Federal Automobile Ins. Assn. v. Meyers, 218 Ala. 520, 119 So. 230:

"* * * We understand the rule to be that if there is some defect of averment in the complaint or a plea, and the court has erred in holding such pleading good, but if there is evidence of the matter so omitted, and both parties try the issue as though such allegation were made, and the court instructs the jury that such matter must be proven, and both parties have full opportunity to and do offer all the evidence they wish on that issue, we will not reverse the case for the error in such ruling on the pleading. So. Rwy. Co. v. Dickson, 211 Ala. 481, 100 So. 665; Best Park & A. Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann.Cas.1917D, 929. * * *"

Assignment of error No. 1 is to the effect that the court erred in entering its judgment in favor of defendant Steele, and against the plaintiffs.

Under this assignment counsel for plaintiffs have argued that the judgment is erroneous for a number of reasons. It is contended that Section 65, Title 39, Code of Alabama 1940, compels the conclusion that Steele was liable as an endorser without regard to the circumstances under which the endorsement was made. Section 65 reads:

"A person placing his signature upon an instrument otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

Steele, named as payee in the note, held the same as trustee or agent for Mr. Clikas, or for Mrs. and Miss Clikas. It was permissible for him to show that as between himself and his immediate endorsees the endorsement was made for the purpose of transferring title to the true owners, i. e., the plaintiffs. Parol evidence was admissible under the circumstances to show the true nature of the transaction. Monroe v. State Bank, 181 Wis. 19, 193 N.W. 991; First National Bank v. Reinman, 93 Ark. 376, 125 S.W. 443; First National Bank of Duncan v. Anderson, 8 Cir., 141 F. 926; Newark Trust Co. v. Kriebel, 49 Cal.App. 614, 193 P. 962.

In Long v. Gwin, 202 Ala. 358, 80 So. 440, the court held that as between immediate endorsers and endorsees, the status of the endorser is fixed only prima facie.

In Monroe v. State Bank, supra, the Wisconsin Supreme Court wrote:

"* * * It has been frequently held that, where there have been antecedent relations between the indorser and indorsee out of which equities have arisen, the indorser may prove these relations and the real nature of the transaction involved in the indorsement. Thus it has been held that the indorser may show as against his indorsee that the indorsement of a note was merely for collection * *, and that an agent in transferring title to his principal by indorsement of negotiable paper did not intend to incur personal liability * * *, and that an indorsement by a principal to his agent was

for a special purpose (B. F. Avery & Sons v. Miller, 86 Ala. 495, 6 So. 38, and other cases) * * *

* * * * * *

" * * * the fact that by some inadvertence the words 'without recourse' were omitted from the indorsement does not change the real nature of the transaction by which the legal title was transferred to him. There was no consideration for the indorsement, and if he had brought suit upon it against the bank it would have been an unconscionable claim."

The court could well have concluded under the evidence that Steele was acting under the instruction of Tony Clikas in handling the transaction as it was handled, and clearly Tony Clikas was the agent for Mrs. Clikas, or was donor to her and Miss Clikas of the mortgage and note. Steele's act was one of accommodation. Steele merely negotiated the note to Mrs. and Miss Clikas. While he received a brokerage fee for the sale of the mortgage, under Steele's testimony and that of Mr. Cunningham, this fee was paid by Gulf Development out of the proceeds of the loan obtained under the mortgage. None of the Clikases were therefore bona fide holders in due course of the note.

■ Counsel for plaintiffs contend, however, that Falkner v. Protective Life Ins. Co., 228 Ala. 57, 152 So. 34, to the effect that when an endorsement is executed at the time of, or before, the execution of the note, the consideration for the note is sufficient consideration for the endorsement, and this principle should compel a reversal of this judgment. It must be remembered, however, that there was before the court evidence tending to show that the endorsement was not executed at the time of, or before, the execution of the note, but on the day following its execution.

■ Counsel for plaintiffs further contend that Tony Clikas could not be considered the agent of Christina Elizabeth Clikas in that she was a minor at the time of the transaction and an attempted appointment of an agent by a minor is void. See American Freehold Land Mortgage Co. v. Dykes, 111 Ala. 178, 18 So. 292; Sims v. Gunter, 201 Ala. 286, 78 So. 62. This argument overlooks the "and/or" nature of the endorsement. It is an alternative statement. Hays v. McCarty, 239 Ala. 400, 195 So. 241. The endorsement was joint or several.

In Longacre v. Knowles (Mo.), 333 S.W. 2d 67, in considering a note payable to A "and/or" B, the Supreme Court of Missouri wrote:

"The word 'or' is disjunctive in its very nature, and is incompatible with tenancy in common (or joint tenancy) because it infers one or the other, but not both."

Under the alternative meaning of "and/or" Mrs. Clikas could clearly be bound by Tony Clikas' acts, he being her agent, if not actually appointed, then by ratification.

Further, it appears that the interest of Miss Clikas in the note was that of donee. A donee of a note takes a promissory note subject to the same defenses as apply against a donor. See 48 A.L.R. p. 237; 10 C.J.S. Bills and Notes, § 373.

■ Counsel further argues that the evidence offered in support of defendant's plea 10 (Novation) is totally insufficient to support the plea. With this contention we are inclined to agree. The judgment will not be reversed on this account however. The judgment was a general one. If the evidence was sufficient to support one or more of defendant's pleas, and we hold it was, the judgment will be referred to such plea or pleas.

■ Finally, counsel for plaintiffs argue that in plea 8, Steele asserts that he "acted as agent for the plaintiffs" while the evidence shows the plaintiffs did not participate in the transaction at its outset.

Evidence concerning the transaction was presented fully by each side. The variance between plea 8 and the evidence directed to said plea was one correctible by amendment. There was no special objection to the evidence pointing out any variance.

Under these circumstances the variance will be deemed as waived. Circuit and Inferior Court Rules of Practice, Rule 34.

Where the evidence is given ore tenus, the trial court's judgment or decree is likened unto the verdict of a jury and will not be disturbed unless plainly and palpably wrong. Benson v. Jefferson Mortgage Co., 276 Ala. 72, 159 So.2d 191; McPherson v. Everett, 277 Ala. 519, 172 So.2d 784; Talley v. Lott, 283 Ala. 499, 218 So.2d 828; Orton v. Gay, 285 Ala. 270, 231 So.2d 305.

In our opinion the judgment below was fairly supported by credible evidence and is due to be affirmed.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.