## EPPINGER et al. v. KENDRICK.[*]

### Sac. No. 46; March 17, 1896.

#### 44 Pac. 234.

**Pleading.—In an Action on a Note Against One as Surety,** defendant denied the suretyship, and alleged that he joined in the execution for the accommodation of plaintiff, and that, if he were liable as surety, the principal maker had put in plaintiff's hands sufficient wheat to pay the note, and directed that the proceeds thereof be applied thereon, and that plaintiff did not so apply them. Held that, though the defenses were not separately pleaded, the answer was sufficient, when questioned, for the first time, on motion to exclude evidence offered thereunder.

**Pleading.—In an Action on a Note, on the Issue as to whether** defendant signed the note for the accommodation of the maker or for the accommodation of plaintiff, the payee, to enable him to use it as collateral, the testimony of defendant and the agent who acted for plaintiff in securing defendant's signature was directly contradictory. There was evidence of subsequent circumstances which, on their face, appeared contradictory of defendant's claim, but, as explained by him, did not discredit his testimony. Held, that a verdict for defendant would not be disturbed.

**Pleading.—Where Inconsistent Defenses are Pleaded,** neither can be used as an admission to destroy the other.

**Notes—Evidence.—Where, in an Action on a Note, Defendant** claims that he signed the note merely for the accommodation of plaintiff, to enable him to use it as collateral, and has already testified as to the circumstances of the transaction, as claimed by him, it is not prejudicial to plaintiff to permit defendant to be asked as to what was his understanding as to the purpose of his signature.

**Notes—Consideration.—Where There is No Evidence to Show** any consideration for a note, other than the circumstances disclosed in the statement of counsel, preceding a question asked by him as to whether there was any other consideration, permitting such question to be asked is not prejudicial.

[*]For subsequent opinion in bank, see 114 Cal. 620, 46 Pac. 613.

APPEAL from Superior Court, Glenn County; S. Millington, Judge.

Action by Eppinger & Co. against J. K. Kendrick and another. From a judgment for defendant Kendrick and an order denying a new trial plaintiffs appeal. Affirmed.

Geis & Kelly for appellants; Hurst & Hurst and C. L. Donohoe for respondent.

HAYNES, C.—This action was brought against M. P. Farnham and J. Kendrick upon two promissory notes, each dated August 19, 1891, payable one day after date, one for $2,000 and the other for $800, to the order of Eppinger & Co., upon which there was claimed to remain unpaid $1,119.04 and interest. Farnham, having been adjudged an insolvent debtor, did not answer, and the action proceeded against Kendrick alone, whose answer consisted of a general denial and a special defense, in which it was alleged that on September 12, 1887, Farnham was indebted to the plaintiffs in the sum of about $6,000, and, at the request of Oscar C. Schultz, manager and agent for said plaintiffs in their mercantile business at Germantown, he executed, with Farnham, a promissory note for $2,000, payable to the order of the plaintiffs one day after date, with interest at the rate of one per cent per month; that he executed the same upon the representation of said Schultz that plaintiffs needed money, that Farnham's note was not good as collateral security, and that his (Kendrick's) name would be used for no other purpose than to make the note good as collateral security at the bank; and that the notes in suit were given in renewal thereof, that he did not execute any of the notes at the request of Farnham, and that, as to him, they were without consideration. It was also alleged that, in 1890, Farnham delivered to plaintiffs a quantity of wheat sufficient to have paid said note, with the request that it should be applied thereon, but that Schultz said that he wanted to use the note longer, and he would see Kendrick, and obtain his consent, but did not do so; that he received no consideration for the execution of any of the notes; and that Farnham did not request him to execute them. The jury returned a verdict for the defendant, and this appeal is from the judgment entered thereon, and from an order denying a new trial.

Plaintiffs' motion for judgment on the pleadings was properly denied. Whether the general denial was sufficient to prevent judgment, in the absence of proof, need not be considered.

Plaintiff also objected to evidence under the special defense, upon the ground that it does not state facts sufficient to constitute a defense. The special defense, so called, really contains two special defenses: (1) That defendant was not Farnham's surety, but joined in the execution of the notes for the accommodation of the plaintiffs, to enable them to raise money upon them as collateral; and (2) that, if he were liable as surety, the principal maker had put in plaintiffs' hands sufficient wheat to pay them, and directed that the proceeds be applied upon the original note, and that they did not so apply it. These defenses should have been separately pleaded; but no objection was taken by motion to require them to be separately stated, nor by special demurrer for ambiguity or uncertainty. Though defectively pleaded, the answer stated a defense, and the objection to evidence upon that ground was properly overruled. So, too, the objection that the agency of Schultz for the plaintiffs is not sufficiently alleged cannot be sustained. The answer in that regard is sufficient, as against an objection to evidence, though defectively pleaded, whatever might have been held if it had been specially demurred to.

The question principally discussed by counsel goes to the sufficiency of the evidence to justify the verdict. The defendant testified that, at the time the original note was executed (September 12, 1887), Mr. Schultz came to him, and said the plaintiffs needed money, that Farnham was owing them, and that he wanted him to go on Farnham's note so that they could use it as collateral; that Farnham did not request it; that defendant declined to execute it, but Schultz appealed to him, reminding him that he had accommodated him in many ways, that as a friend he wanted him to sign it so he could use it as collateral, and he then agreed to do so; and that the notes in suit were renewals, without any new agreement or consideration. Mr. Schultz testified, in relation to the making of the original note, as follows: "Mr. Eppinger had been up and saw that the account was very large, and said the account had to be reduced, told me to go out and see Farnham, which I did, and told him what Mr. Eppinger

said. Mr. Farnham said he could not pay at present, and stated he had consummated a transaction with Mr. Kendrick on a patent plow, and was willing that I have the royalty. I told him that wasn't satisfactory to my people at all. I then says, 'If Mr. Kendrick will sign your note with you for $2,000, you can secure Kendrick by allowing him to retain the royalty on the plows he is to manufacture, as security for the money.' '' These statements of defendant and Schultz are materially conflicting; but appellants contend that the other evidence given by and on behalf of defendant renders defendant's statement as to the transaction so improbable that the court cannot consider it, and that therefore there is no material conflict. One of these items of evidence relates to the plow contract. Some time prior to the making of said note, a contract was made between Farnham and Kendrick, by which Kendrick was to manufacture a patented plow for Farnham, under which Farnham was to receive a royalty of $10 for each plow sold; and, at the suggestion of Schultz, at the time the original note was made, an additional agreement was made by which Kendrick was to retain the royalty to the extent of $2,000, and pay the same to plaintiffs; and, if Farnham should otherwise pay the note, this latter agreement should be canceled. Schultz learned of the plow contract when he went to see Farnham, and that, we may reasonably suppose, led Schultz to make the effort to have Kendrick go upon Farnham's note. It should not be overlooked that Schultz nowhere denies that he, and not Farnham, requested Kendrick to go on the note; nor did he deny that he represented to Kendrick that he wanted his signature to enable him to use it as collateral with which to raise money; nor was Schultz's suggestion that Farnham should secure defendant by allowing him to retain and apply the royalty upon the note inconsistent with that purpose. Kendrick did not solicit security from Farnham, but this contract was made at Schultz's suggestion, and was written and retained by him, and the plaintiffs thereby obtained from Farnham whatever security the royalty afforded.

Appellants contend, however, that it is not reasonable that plaintiffs, if they desired to use the note as collateral, would have made it payable one day after date. But, on the other hand, it may be said that, if Kendrick's purpose was to secure the plaintiffs' claim against Farnham, it is equally improb-

able that he would have placed himself in a situation in which he was liable to be sued the second day thereafter, instead of stipulating for time to enable Farnham to pay. So far, therefore, as the evidence relates to the making of the original note, the evidence is sufficient to justify the jury in finding that defendant was an accommodation maker for the benefit of plaintiffs. The notes here in suit were given in renewal of the former note, the one for $2,000 representing the principal, and the one for $800 representing the interest. There does not appear to have been any new consideration, or any new agreement or understanding at the time they were executed; and defendant testified that they were to be used in place of the other note. The circumstances relied upon by plaintiffs to show that the notes were not executed by Kendrick, otherwise than as security for Farnham, occurred afterward. There is credited on one of these notes, September 7, 1892, $714.32, and on the other, at the same date, $285.68, making, together, $1,000, and that payment was made by a check drawn by the Bank of Willows on the Bank of California to the order of Mr. Kendrick, and therefore appeared to have been made by him; but he testified that it was Farnham's money, and came from his wheat, and was represented by another check, which he took to the bank at Willows, and got its check on the Bank of California for it. According to the testimony of Mr. Kendrick, Schultz never demanded any payment from him until in July, 1892, and that that was the first time Schultz said or did anything showing that he held him personally liable, and that defendant then denied his liability; that Schultz then said, "You live right here by Mr. Farnham, and you can take a crop mortgage on his crop, and get your money from Farnham. We live down at Dixon, and we do not have the opportunity. Hochheimer & Co. will take what he has, and we cannot get it." Kendrick took a crop mortgage from Farnham, but the date of the mortgage I do not find. On June 6, 1893, Kendrick sold to plaintiffs fifty tons of wheat at $1.15 per hundred, to be delivered in July, the proceeds to apply on these notes, and this makes the amount of the only other credit upon the notes, amounting, together, to $1,156.73, credited on July 15, 1893. On July 4th, prior to this delivery, Kendrick wrote Schultz, in reply to some communication from him, as follows: "Dear Sir: I have just telegraphed you, 'I would with one prop-

osition. See letter.' You said, when here, I could have all month. I mean I will ship immediately with this proposition: Those notes are to be taken up when I pay the $1,000 this month, and a new one made payable 1st of August, 1894. The note will be just as good, and if there is any crisis I will not be compelled to pay it until the time we agreed I could have when you were here." Mr. Kendrick wrote another letter two days later of similar import. The first of these letters was evidently written in reply to some communication from Schultz urging an immediate shipment of the wheat, which, under the contract, was to be shipped in "July." Mr. Kendrick explains what he did by saying he was informed by Schultz that his company was in a bad fix, and, he inferred, "were liable to go under"; that he did not want these notes outstanding; that he "wanted a note that could not touch them for a year," so he could get the wheat out of Farnham's crop, and that was why the letters were written; that he was afraid the company might break up, leaving the notes in the hands of others. That there were grounds for this fear appears from Schultz's letter to him of July 18, 1893, in which he said: "During this awful stringency of money, every available thing was sent to the city, so that it may be some few days before I can get your old note." I fail to find, in any of the transactions subsequent to the making of these renewals, any conclusive evidence affecting the uncontradicted testimony of the defendant as to the circumstances and representations attending the original transaction. Upon the face of some of these subsequent transactions, they would appear to be inconsistent with defendant's claim; but, as explained by him, they do not so affect his testimony as to remove the conflict conceded to exist between the testimony of Schultz and Kendrick as to the original transaction. Besides, defendant was corroborated to a greater or less extent by Farnham and some other witnesses. Upon this branch of the case we cannot say that the jury were not justified in finding for defendant.

This conclusion makes it unnecessary to consider whether the plaintiffs were bound to apply the proceeds of the wheat delivered to them by Farnham in 1889 upon the old note, nor whether the answer of defendant was such as to make that claim available as a defense. It is well settled that a defendant may plead as many defenses as he may have, though

they are inconsistent, and neither of two inconsistent defenses can be used as an admission to destroy the other.

Appellants also contend that the verdict is against law, because it is in disregard of ten different instructions given them by the court. These instructions cannot be repeated here. We have examined each one, and each instructs the jury that, if they find, from the evidence, that certain facts exist, their verdict must be for the plaintiffs; but whether those facts exist was a question for the jury. So that the question is not whether there was a palpable violation of the instructions, but whether the evidence justified them in finding upon these facts as the verdict shows they must have done in order to find for the defendant. The fourth instruction given at defendant's request, relating to the alleged failure of plaintiffs to apply the proceeds of the wheat delivered to them by Farnham in 1889 in payment of the original note, need not be considered, as the verdict of the jury can be sustained under the defense that Kendrick was, as to the plaintiffs, an accommodation maker.

The defendant was asked by his counsel the following question: "At the time of the signing of these renewal notes, what was your understanding as to the purpose of your signature thereto?" Plaintiffs were not prejudiced by the ruling permitting it to be answered. The witness had already testified to the circumstances surrounding the transaction, that he did not sign them for Farnham, that he was not asked to become security for Farnham, that he received no benefit or anything of value, and that the request therefor came from the plaintiffs. The answer was that "it was to be used in place of other note," and there was no evidence to the contrary. The following question was also objected to: "Was there any other or further consideration for the signing of the new notes, other than the $2,000 note that had been previously given?" This question also followed a statement which appeared to be a full recital of all the circumstances connected with the transaction, and was doubtless intended to cover any other possible consideration; and, in the connection in which it was put, cannot properly be considered a conclusion of law. But, if it were so, as there was no evidence tending to show any consideration other than the circumstances already disclosed, we cannot see that plaintiffs were prejudiced.

We are also referred, by folios, to numerous other exceptions taken by appellants, and which are not argued, nor even restated, in appellants' brief. We have, however, examined each of them, and find no error justifying a reversal. We advise that the judgment and order appealed from be affirmed.

We concur: Britt, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.