[Civ. No. 3468.  First Appellate District, Division Two.—October 18, 1920.]

## NEWARK TRUST COMPANY (a Corporation), Appellant, v. FRED L. KRIEBEL et al., Respondents.

[1] PROMISSORY NOTE—EXECUTION IN PAYMENT OF STOCK—AGREE-MENT OF AGENT TO RESELL—EXTENT OF OBLIGATION—DEMAND.—Where the agent and trustee of a corporation to be organized sells certain stock therein, taking the purchaser's promissory note in payment, and, as a substantial part of the consideration for such note, the agent undertakes and agrees that he will sell a given number of shares of such stock at a certain price within a specified time from the organization of the corporation, and, upon the organization of such corporation and the issuance of the stock, it is deposited with said agent by the purchaser as collateral secur-ity for such note, the agent is under obligation to sell the stock as agreed without previous demand so to do by the owner; and this obligation on his part to sell such stock is not affected by the fact that under the agreement the owner of the stock has the right to pay the note, secure the release of the collateral, and refuse to sell.

[2] ID.—KNOWLEDGE OF STOCKHOLDERS—VALIDITY OF RESALE AGREE-MENT.—The entire contract, consisting of the subscription agree-ment, the promissory note, and the agreement to resell, having been between the subscriber and the agent for the stockholders of the corporation, and the contract in all its parts and terms having been known to the corporation and the subscribers to its stock, it was not void as against the other stockholders.

[3] ID.—FAILURE OF CONSIDERATION—RENEWAL OF NOTE—WAIVER OF DEFENSES.—The maker of such note did not waive the defense she had thereto by her subsequent renewal thereof where, upon the renewal of the note, she informed the holder thereof that she would defend any suit to enforce its collection upon the ground that there had been a violation of the contract to sell the stock.

[4] ID.—RESCISSION—DUTY TO RETURN VALUELESS STOCK.—The shares of stock in the corporation having been part consideration for the promissory note, but they having been absolutely valueless at the time of the commencement of the action upon the note, the maker of the note was under no obligation to return such stock as a condition precedent to rescission, the balance of the consideration having also failed.

[5] ID.—ACTION ON NOTE—PLEADING—INCONSISTENT REMEDIES—SUR-PLUSAGE.—In an action upon a promissory note, the consideration for which has completely failed, where the defendant, in addition to filing an answer setting up the failure of consideration, files

a cross-complaint against one of her codefendants setting up the fact of a breach of his agreement to resell certain stock, which agreement constituted a part consideration for the note sued on, and asks damages for such breach of contract, and she is adjudged free from liability upon her note because of the failure of consideration, but she is not awarded damages as prayed, the allegations in the cross-complaint regarding the recovery of damages will be treated as surplusage.

[6] ID.—INCONSISTENT DEFENSES PERMISSIBLE.—It is permissible to set up inconsistent defenses without raising a presumption that one is a waiver of the other.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Irvin C. Louis and Rush M. Blodget for Appellant.

Newlin & Ashburn and J. W. McKinley for Respondents.

LANGDON, P. J.—This is an appeal from an order denying plaintiff's motion to set aside the judgment for defendants and enter judgment for plaintiff on the findings. A jury was impaneled advisory to the court and found certain facts which the court adopted in its findings and also returned a general verdict in favor of the defendant Phillips, and the court gave judgment in her favor. Plaintiff did not appeal from this judgment, but now appeals from an order denying its motion to vacate the judgment in favor of defendant and to enter judgment for plaintiff on the findings. Consequently, the only question before this court is whether or not the conclusions of law are consistent with and supported by the findings of fact.

The action was brought upon a promissory note for ten thousand dollars, given by defendant Phillips in renewal of a note for the same amount. The original note was given in June, 1913, to defendant Kriebel, as trustee for the Rector Automatic Radiator Company, a corporation to be formed in the future. This note had attached to it a collateral agreement pledging certain stock as security therefor. The court submitted to the jury four special interrogatories, which were answered by the jury. The findings of the jury upon these questions were adopted by the court in its find-

ings, and will be discussed in connection therewith. The findings of the court disclose the following facts:

On June 20, 1913, the defendant Jane M. Phillips executed and delivered to defendant Kriebel a promissory note for ten thousand dollars. This note was given in part payment for something over sixteen thousand shares of stock in a company thereafter to be formed and incorporated under the name of Rector Automatic Radiator Company, which company was later incorporated as planned. The defendant Kriebel, in selling the said stock to the defendant Phillips, and in taking said promissory note in part payment therefor, was acting as agent and trustee for the said corporation thereafter to be formed, and for the subscribers to the stock thereof, and he took the said promissory note in his own name, but in trust for the said corporation and its stockholders. Said defendant Kriebel also, contemporaneously with the execution of said promissory note, and while acting as such agent and trustee, and as a part of said transaction for the sale and purchase of said stock of the Rector Automatic Radiator Company and the execution of said promissory note for ten thousand dollars, and in order to induce the making of said note by said defendant Phillips, did execute and deliver, in his capacity as agent and trustee for the said corporation and its stockholders, a certain instrument reading as follows: "In making this subscription, it is also understood I will personally sell for you sixteen thousand shares of stock in the new company at par, less ten per cent, within three months from the organization of the company." The promise made by said Kriebel to sell said stock for defendant Phillips which was contained in said contemporaneous written agreement was a promise made by him in his capacity as agent and trustee, and was so understood by the defendants Kriebel and Phillips, and said promise constituted the substantial consideration for the said promissory note.

Kriebel did not, at any time, either in his individual capacity or as such agent and trustee, nor did the Rector Automatic Radiator Company, ever sell or attempt to sell for the defendant Phillips sixteen thousand shares of said stock, either at the price named in said agreement or at any other price.

The court further found that by reason of the failure to perform the terms of said agreement to so sell sixteen thousand shares of said stock, there was a total failure of consideration for the said promissory note dated June 20, 1913. It was the note given as a renewal of said note of June 20, 1913, that was the basis of the present action.

The court also found that at the time of the execution and delivery of the said note dated June 20, 1913, by the defendant Phillips, and at the time of the receipt thereof by defendant Kriebel, and at the time of the receipt thereof by the defendant Rector Gas Lamp Company (the assignee of Kriebel, trustee), said company had full knowledge of the contents of said writing, wherein Kriebel, as agent for the Rector Automatic Radiator Company, agreed to sell said stock; and that the Rector Automatic Radiator Company and its assignee, Rector Gas Lamp Company, fully acquiesced in and consented to the terms of said agreement at and before the time of the transfer of the said promissory note to one Waters B. Day, who was the real owner at the time of the commencement of this action—plaintiff being the assignee of said note merely for the purpose of collection.

The court further found that at the time of the commencement of this action, the stock agreed to be purchased by defendant Phillips under said stock subscription agreement was of no value whatsoever. It further appears from the record that the defendant Phillips is an incompetent, and was represented in this action by her general guardian.

With reference to the judgment in favor of defendant Kriebel, it was found that the Rector Gas Lamp Company, the first assignee herein, knew, at the time the note was assigned to it, that the said Kriebel was not the owner of said note, but was holding the same as trustee for the Rector Automatic Radiator Company, and that the assignment by said Kriebel of said note and collateral agreement was merely for the purpose of transferring to the said Rector Gas Lamp Company the legal title to said note, and that said assignment and indorsement was not made for the purpose of guaranteeing personally the payment of said note. It was also found that said indorsement was made by the said defendant Kriebel, as agent and trustee, for the purpose of transferring said note. These findings, of course, warrant

the denial of judgment in favor of the plaintiff as against defendant Kriebel.

[1] However, the real attack is made upon the judgment in favor of defendant Phillips. It is urged with reference to this, first: That defendant Kriebel was under no obligation to sell the stock in question under his agreement as trustee with defendant Phillips unless defendant Phillips should, within the time specified in said agreement request him to do so, and tender the stock to him. There is a finding of the court upon this point, that defendant Phillips did not make demand upon Kriebel to sell said stock within three months after the incorporation of the company, and did not offer him the stock. But there is also a finding that defendant Phillips did everything that was required of her under said agreement, and that she was not obligated to offer said stock to defendant Kriebel. Appellant contends that the force of this general finding of full performance on the part of defendant Phillips is overcome by the special finding that she did not offer the stock to Kriebel for sale. In the first place, it appears from the complaint and the findings that 40,000 shares of said stock of said Rector Automatic Radiator Company were deposited with defendant Kriebel as collateral security for the payment of the promissory note, in lieu of other security which was returned by Kriebel to defendant Phillips. It therefore appears that at all times the defendant Kriebel had in his possession more than the sixteen thousand shares of the stock which he had agreed to sell. But quite apart from this consideration, it appears from said agreement for the resale that there was no obligation on the part of defendant Phillips to make demand upon Kriebel to carry out his positive engagement. Kriebel contracted unconditionally to sell sixteen thousand shares of said stock, which was in his possession as collateral, within three months after the incorporation of the company. It is true defendant Phillips did not, in terms, agree to sell the stock. It is immaterial to this inquiry whether she might have declined to sell after a purchaser had been found by Kriebel, as contended by appellant. For regardless of this, Kriebel was bound to make an offer of performance of his positive engagement. He had accepted a valuable consideration for his promise—the promissory note in question, as found by the court. If defendant Phillips

then had the privilege of accepting or rejecting such offer, in this respect only the contract was an option contract, as contended by appellant. It was not optional with Kriebel whether he would perform or not. His positive undertaking to sell sixteen thousand shares of the stock at a certain price within a specified time, for which promise he had received a valuable consideration, coupled with the fact that forty thousand shares of said stock were in his possession as collateral security, certainly made it unnecessary for defendant Phillips to make demand upon him to do what he had contracted to do, irrespective of the question of whether or not she might have paid the note, released the collateral, and refused to sell at all. So long as she had not waived her rights, or released him from his duty under the agreement by refusing to sell, he was bound to sell within the time covered by the contract.

[2] Appellant also argues that the subscription contract for the stock and the note given therefor was a contract between defendant Phillips and the other subscribers to the stock and such a contract cannot be varied by a separate writing such as this agreement to resell the stock. However, the answer to this objection appears in the findings that all parts of this contract—the subscription agreement, the note, the agreement to resell—were between Kriebel, as agent for the stockholders, and defendant Phillips; that the contract in all its parts and terms was known to said company and the subscribers to its stock. Such an agreement is, of course, not void against the other stockholders. It is their contract and assented to by them. A stipulation between a corporation and a purchaser of stock therein whereby the corporation agrees to repurchase such stock upon certain conditions is not to be denounced as a fraud on other subscribers and creditors of the corporation, where it is not shown that any fraudulent invasion of the rights of stockholders or creditors has been attempted or would result. (*Schulte* v. *Boulevard Gardens Land Co.*, 164 Cal. 464, [129 Pac. 582].) In said last cited case, 164 Cal., at page 468 thereof, [129 Pac. 583], it is said: "In the case at bar, however, we have something more than a mere attempt by a stockholder to sell, and by a corporation to buy, shares of stock. The plaintiff is seeking to enforce a part of an entire contract under which the stock was originally issued

to him. The right to return the stock and to receive 'the sum agreed to be paid upon such return was a material and indivisible part of the consideration upon which the plaintiff agreed to become a stockholder. As between the parties it would be manifestly unjust to permit the corporation to retain the money paid by plaintiff, and at the same time to repudiate the promise which it gave in exchange for the money. The obligation to pay, upon a return of the shares the sum agreed to be paid, is not to be viewed as a new undertaking, arising after the plaintiff became a stockholder. The sale to plaintiff was conditional. He never became a stockholder except subject to the qualification that he might return his shares upon the stipulated terms.''

It is to be remembered that in the present case, as in the case from which quotation has just been made, the rights of creditors are not involved, and it appears from the findings that the assignee of this note from the Rector Automatic Radiator Company had full knowledge of and acquiesced in all the terms and conditions of the subscription contract. Nor does the case involve the question of the invalidity of secret stipulations limiting the apparent liability of certain subscribers. No facts appear to justify any inference of a fraudulent invasion of the rights of any stockholder, but, on the contrary, it is found that the entire conditional agreement was made by Kriebel while he was acting as agent and trustee of the other subscribers. Knowledge of the terms of said conditional agreement with Phillips, made by their agent, will be imputed to such subscribers.

[3] It is also claimed that defendant Phillips waived any defense she might have had to the original note given in 1913 by her renewal of the said note in 1914. The court found that upon this renewal of said note defendant Phillips, by her attorney, informed the holder thereof that she would defend any suit to enforce its collection upon the ground that there had been a violation of the contract to resell the stock. This was correctly found by the trial court to amount to a reservation of all defenses to the original note, and to negative any waiver of such rights by a renewal thereof. ''Where a note is executed to a payee only in renewal of a prior note given to him, the real consideration for which it is given is that for which the prior note was given, and the failure of the consideration of the same

may be pleaded in an action on the latter note." (8 Corpus Juris, p. .751, sec. 1022). "The giving of a note unexplained is not conclusive evidence of a settlement of all the demands between the parties to such an instrument. But the question of the intent of the parties in such case is one of fact to be determined .by the jury from all the evidence relating to the transaction. . . . And so also, whether a subsequent. note is given in payment of or only in renewal of a prior note is not a question of law but one of fact, to be determined by the jury; and when it is given in renewal only of a prior note the real consideration for which it is given is that for which the prior note was given, and it is, in a suit upon the subsequent note, competent to · show that the consideration has failed." (*Wheelock* v. *Berkeley,* 138 Ill. 153, [27 N. E. 942].) The jury found, and the court adopted such finding, that defendant Phillips did not waive her rights in renewing the note. "Waiver is the intentional relinquishment of a known right after knowledge of the facts." (*Allen* v. *Mayfield,* 164 Cal. 6, at p. 11, [127 Pac. 45, 48].) The positive statement, therefore, of defendant Phillips to the holder of the 'note that she would enforce her rights as a defense against the note negatives any intention to waive the same. The objection of the appellant that the renewal of the note was a waiver of the defenses against the original note is, therefore, without merit.

[4] Appellant contends that although the defendant Phillips might have rescinded the contract under section 1689 of the Civil Code, the aggrieved party must tender back what has been received under the contract as a condition precedent to a right to rescind. This is unquestionably the law, but the trial court found that the contract for resale which had not been performed by Kriebel was the only consideration for the promissory note, and that there was a total failure of consideration for the promissory note. Appellant argues that it appears from the other findings that the shares of stock in the Rector Automatic Radiator Company were also a consideration for the note and that there is no finding that they have been returned. The court found that at the time of the commencement of the action, the shares of stock were absolutely valueless. There is no obligation to return a consideration which is of no value

whatever. (Civ. Code, sec. 1691, subd. 2; *Gifford* v. *Carvill,* 29 Cal. 593.)

It is claimed by appellant, however, that in the absence of a finding as to the value of the stock three months after the incorporation of the company—which is the time when performance of his obligation was due by Kriebel, and the time when he failed therein, and the time when Mrs. Phillips' right of rescission arose—it must be presumed that the stock was of some value at that time and so should have been returned and rescission made at the proper time. It appears by the complaint and from the findings that forty thousand shares of this stock were in the hands of Kriebel or his assignees as collateral security for the note. Therefore, defendant Phillips had not possession of the stock to give to the defaulting defendant, but the stock was actually in his own hands. She had the right, upon the failure of consideration for her note, either to rescind at once or to wait and defend upon that ground any suit that might be brought on her note, and she could not have recovered back these shares of stock deposited as collateral after successfully defending a suit upon the note given for their purchase price. It appears, therefore, that defendant Phillips has done everything required of her and everything that she could do.

[5] There is one other matter urged by appellant which warrants consideration. It arises also in connection with the claim of waiver by defendant Phillips of her defenses to the note. Defendant Phillips, in addition to filing her answer in this cause, filed a cross-complaint against defendant Kriebel setting up the fact of the breach of his agreement to resell the stock for the price agreed upon therein, and asking damages for such breach of contract. She was not awarded such damages, but she was adjudged free from liability upon her note because of a failure of consideration therefor. Appellant points out that Mrs. Phillips had a choice of two remedies upon the failure of consideration—either the remedy of rescission and recovery of the consideration paid by her, or an affirmance of the contract and a suit for damages. Therefore, it is argued, her cross-complaint in which she asked for damages for the breach was an affirmance of the contract; it was an election on her part not to rescind, and, therefore, the defense to her note based upon the theory

of rescission of the contract should not have been permitted to her.

[6] It is permissible to set up inconsistent defenses without raising a presumption that one is a waiver of the other. (*Billings* v. *Drew,* 52 Cal. 565; *Eppinger* v. *Kendrick,* 5 Cal. Unrep. 295, at pp. 300, 301, [44 Pac. 234]; *Snipsic Co.* v. *Smith,* 7 Cal. App. 150, [93 Pac. 1035].) We see no reason for a different rule when the allegations are set up in answer and counterclaim. Section 441 of the Code of Civil Procedure provides that a defendant may set forth by answer as many defenses and counterclaims as he may have. As before stated, the defendant in the present case was not permitted to recover upon her counterclaim, and in support of the judgment, we are of the opinion that the allegations regarding the recovery of damages may be treated as surplusage. In the case of *Montgomery* v. *McLaury,* 143 Cal. 83, [76 Pac. 964], a similar question was considered. It was there said: "It seems perfectly clear from the whole frame of the complaint no less than from the specific relief which it prays, that the intention of the pleader was to state facts entitling him to the rescission which he prayed. But at the same time he stated facts showing that the plaintiffs had been damaged in the sum of seven thousand dollars, and since he prayed also for the recovery of that amount of damages, it would seem that the theory of the complaint was to set forth all the facts surrounding the transaction . . . and to pray for any and every kind of relief to which, upon the facts, the plaintiffs might be found entitled. In most cases this is a correct theory of pleading under our system of practice, which recognizes but one form of action—an action on the case. But it sometimes happens that a party seeking redress for an injury is obliged to make an election between two inconsistent positions, and planting himself firmly upon one to definitely renounce the other before he can claim relief in any form. Such, appellants contend, is the case here. The doctrine is well settled, they say, that one defrauded in a bargain is restricted to one of two remedies, between which he must make an election before he can institute an action. He may affirm the contract and have his action at law for damages for deceit, or he may disaffirm the contract and sue in equity for a rescission, but he cannot pursue both remedies at the same time, nor either until

he has affirmed or disaffirmed the contract; for until he affirms he has no cause of action for the deceit, and until he disaffirms, he has no right to a rescission. . . . There is no such rigid and inexorable rule as to election of remedies in cases of fraud as that for which appellants contend. It is undoubtedly true that when one who has been defrauded in a contract elects to affirm it after discovery of the full extent of the fraud he cannot afterward claim a rescission. This is simply a result flowing from the general doctrine of estoppel. But an election to disaffirm a contract induced by fraud, and an effort to obtain a rescission, will not, if resisted . . . bar an action based upon a subsequent affirmance of the contract. . . . It is not denied that the complaint in this case contains every allegation necessary to sustain an action for deceit, but appellants contend that other allegations which it contains, as well as its specific prayer for relief, show that the contract has been disaffirmed, and, therefore, that it will not sustain a judgment based upon the theory of affirmance. . . . There does not seem to be any good reason why, after a trial of the issues and after findings by the court which show that a rescission has been made impossible by the acts of the appellants, those portions of the complaint which are framed with a view to rescission may not be treated as surplusage. . . . No injustice can then possibly result from treating as mere surplusage all such portions of the complaint and the prayer for relief as may have reference to a rescission.''

We think the facts in the present case present the same reason for the rule just quoted as the facts in the case from which the quotation was taken. We are also persuaded that the judgment should be sustained by the consideration that it plainly appears from the entire record before us that substantial justice has been done between the parties, and under such circumstances a reversal is not warranted because of any error in the pleadings. Nothing was awarded to defendant Phillips under the superfluous allegations contained in her pleadings, and no damage has resulted to the appellant by reason thereof.

The judgment is affirmed.

Nourse, J., and Brittain, J., concurred.